**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TIMOTHY HOGAN et al.,**

                  **Plaintiffs,**                  3:13-cv-9
                                                            (GLS/DEP)

                  v.

**FIDELITY NATIONAL PROPERTY
& CASUALTY INSURANCE
COMPANY,**

                  **Defendant.**
_____
**APPEARANCES:**                            **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Timothy Hogan
Pro Se
14 Locust Street
Windsor, NY 13865

Stacy Hogan
Pro Se
623 Nelson Rd.
Johnson City, NY 13790

**FOR THE DEFENDANT:**
Stradley, Ronon Law Firm          ELLEN R. ROGOFF, ESQ.
2005 Market Street, Suite 2600
Philadelphia, PA 19103-7098

Nielsen, Carter Law Firm            JOSEPH J. AGUDA, JR., ESQ.
3838 N. Causeway Boulevard
Suite 2850
Metairie, LA 70002

Iseman, Cunningham Law Firm  JAMES P. LAGIOS, ESQ.
9 Thurlow Terrace  JOHN. F. QUEENAN, ESQ.
Albany, NY 12203

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiffs *pro se* Timothy Hogan and Stacy Hogan commenced this action against defendant Fidelity National Property & Casualty Insurance Company, the Write Your Own (WYO) insurance company that issued their federal flood insurance policy pursuant to the National Flood Insurance Act (NFIA) of 1968, as amended.[1] (Compl., Dkt. No. 1.) Plaintiffs allege that the denial of their claim for payment of flood-related damages was a breach of contract, and "breach of the covenants of good faith and fair dealing, and was tortious and in bad faith." (*Id.*) Pending is Fidelity's motion for summary judgment. (Dkt. No. 23.) For the reasons that follow, the motion is granted.

## II. Background

---

[1] *See* 42 U.S.C. §§ 4001-4131.

**A.   Facts**[2]

Fidelity, serving as a WYO insurance program carrier, issued a Standard Flood Insurance Policy (SFIP) to plaintiffs for the period of February 28, 2011 to February 28, 2012, pursuant to the NFIA.[3]  (Dkt. No. 23, Attach. 2 ¶ 5; Def.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 23, Attach. 17.)  The SFIP provided $38,500 of coverage for plaintiffs' single family home.  (Dkt. No. 23, Attach. 3; Def.'s SMF ¶ 1.)  On September 8, 2011, as a result of a flood caused by Tropical Storm Lee, plaintiffs' home was damaged.[4]  (Def.'s SMF ¶ 2; Dkt. No. 25 at 1.)  The following day, plaintiffs submitted a claim to Fidelity for the damages. (Def.'s SMF ¶ 3.)  Shortly thereafter, Colonial Claims Corporation, an independent adjusting firm assigned by Fidelity, inspected the property and recommended payment to plaintiffs in the amount of $1,107.58.  (*Id.* ¶ 5; Dkt. No. 23, Attach. 2 ¶¶ 8-9.)  Accordingly, Colonial Claims prepared a

---

[2] Unless otherwise noted, the facts are undisputed.

[3] Defendant's statement that the SFIP was issued for the period of February 28, 2011 to February 2, 2012 appears to be a typographical error.  (Def. SMF ¶ 1; Dkt. No. 23, Attach. 3.)

[4] Fidelity contends that plaintiffs' home was damaged on August 28, 2011 by Hurricane Irene and/or on September 8, 2011 by Tropical Storm Lee.  (Def.'s SMF ¶ 2.)  Plaintiffs' complaint indicates that their home was damaged by Hurricane Irene.  (Compl. ¶ 2.)  However, plaintiffs now state that their home was damaged by Tropical Storm Lee, on September 8, 2011.  (Dkt. No. 25 at 1.)

3

"proof of loss" statement in that amount. (Def.'s SMF ¶ 5.)

On December 5, 2011, plaintiffs submitted the unexecuted proof-of-loss form to Fidelity, with the handwritten notation "decline" inscribed at the bottom of the form. (*Id.* ¶ 6; Dkt. No. 23, Attach. 6 at 3.) In a letter to Colonial Claims, plaintiffs asserted that "there is much more damage than originally noted in the inspection that was done." (Dkt. No. 23, Attach. 6 at 2.) Fidelity issued a letter to plaintiffs dated January 6, 2012 stating the following:

> The engineer reports no structural or foundation repairs are necessary as a result of the flood loss . . . . After reviewing the engineer's report, we must respectfully deny your claim for structural or foundation damages. . . . You previously indicated you are electing not to sign the [p]roof of [l]oss for the undisputed damage in the amount of $1,107.58 after application of your $2,000.00 policy deductible. We are unable to issue payment without a properly executed [p]roof of [l]oss.

(Dkt. No. 23, Attach 7 at 2.) Subsequently, in August 2012, plaintiffs submitted the proof-of-loss form prepared by Colonial Claims, with handwritten notes changing, among other things, the net amount claimed. (Def.'s SMF ¶ 7.) Plaintiffs indicated that the net amount claimed was "$88,307.26 or $38,500.00." (*Id.*; Dkt. No. 23, Attach. 8.)

4

By way of letter on August 8, 2012, Fidelity rejected the signed proof of loss because "the document ha[d] been altered." (Dkt. No. 23, Attach. 9.) Fidelity enclosed another proof-of-loss form for the undisputed net claimed amount of $1,107.58 and advised plaintiffs that

> signing the [p]roof of [l]oss for the undisputed amount does not prevent you from pursuing further covered damages which can be handled through a supplement. In the event we do not receive your unaltered signed [p]roof of [l]oss within the next thirty . . . days we will be forced to deny this claim.

(*Id.*) On September 11, 2012, Fidelity again wrote to plaintiffs, explaining that, because it had "not received a valid properly executed [p]roof of [l]oss representing the damages arising from the . . . flood event," Fidelity was forced to deny the claim. (Dkt. No. 23, Attach. 10 at 2; Def.'s SMF ¶ 9.) Thereafter, on June 19, 2013, plaintiffs again submitted the proof-of-loss form prepared by Colonial Claims, with the handwritten notation "Supplemental" at the top of the page, and the net amount claimed increased to "$88,307.26" or "$68,500" due to the addition of $30,000 for Increased Cost of Compliance payments.[5] (Dkt. No. 23, Attach. 11; Def.'s

---

[5] The SFIP provides up to $30,000 under the "Increased Cost of Compliance" section, which "pays [the insured] to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage." 44 C.F.R. pt. 61, app. A(1), art. III(D)(1), (2).

SMF ¶ 11.)

B.  **Procedural History**

Plaintiffs commenced the instant action on January 4, 2013. (Compl.) Following joinder of issue, (Dkt. No. 6), and the close of discovery, (Dkt. No. 15), Fidelity filed the now-pending motion for summary judgment, (Dkt. No. 23).

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

A.  **Breach of Contract**

Fidelity first argues that plaintiffs' failure to timely submit a signed and sworn proof of loss in support of their flood insurance claim, as required by article VII(J)(4) of the SFIP, bars them from recovery for breach of contract. (Dkt. No. 23, Attach. 18 at 12-13.) According to Fidelity, a sworn proof of loss is also a condition precedent to filing suit

6

under the SFIP. (*Id.* at 14-15.) Plaintiffs respond that they timely filed a proof of loss on December 5, 2011, which was rejected by Fidelity. (Dkt. No. 25 at 4.) Further, plaintiffs argue that, while they "could not sign a [p]roof of [l]oss with the wrong date and wrong amount for a home that wasn't properly inspected for damages," Fidelity was "well aware of a loss" at their property before the deadline for filing a proof of loss passed. (*Id.* at 4-5.) The court agrees with Fidelity.

The National Flood Insurance Program (NFIP) was created in 1968 by the NFIA in order to make it more economic for the private insurance industry to make flood insurance available to those who need it, "on reasonable terms and conditions." 42 U.S.C. § 4001(b); *see Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 183 (2d Cir. 2006). The NFIP is administered by the Federal Emergency Management Agency (FEMA), and "supported by the federal treasury, which pays for claims that exceed the revenues collected by private insurers from flood insurance premiums." *Palmieri*, 445 F.3d at 183 (citation omitted). FEMA is authorized to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance." 42

U.S.C. § 4019(a).

"Pursuant to its authority under 42 U.S.C. § 4081(a), FEMA created the WYO Program, which allows private insurers, also known as 'WYO companies,' to issue and administer flood-risk policies under the NFIP." *Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 174-75 (2d Cir. 2012); *see* 44 C.F.R. pt. 62, app. A. While the private insurance companies administer the federal program, "[i]t is the Government, not the companies, that pays the claims," *Palmieri*, 445 F.3d at 184, and, therefore, "a lawsuit against a WYO company[,]" like Fidelity in this case, "is, in reality, a suit against FEMA," *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166-67 (3d Cir. 1998). WYO companies, thus, act as "fiscal agents of the United States," 42 U.S.C. § 4071(a)(1), "but they are not general agents and therefore must strictly enforce the provisions set out in the regulations, varying the terms of a policy only with FEMA's express written consent." *Jacobson*, 672 F.3d at 175 (citing 44 C.F.R. §§ 61.4(b), 61.13(d)-(e), 62.23(c)-(d)). Notably, the standard terms and conditions of the flood insurance policies issued by WYO companies, including the SFIP here, are codified regulations. *Compare* 44 C.F.R. pt. 61., app. A(1), *with* (Dkt. No. 23, Attach. 7 at 3-6; Dkt. No. 23, Attach. 10 at 2-4.)

The SFIP requires an insured party to submit a "signed and sworn" proof of loss to the insurer within sixty days of a flood loss. 44 C.F.R. pt. 61, app. A(1), art. VII(J)(4).[6] FEMA extended the proof of loss filing deadline for losses related to Hurricane Irene and Tropical Storm Lee, giving plaintiffs 150 days from the date of loss to submit a signed proof of loss for claims related to Hurricane Irene, and 165 days from the date of loss to submit a signed proof of loss for claims related to Tropical Storm Lee. (Dkt. No. 23, Attach. 12; Dkt. No. 23, Attach. 13.) Thus, plaintiffs

---

[6] The full text of 44 C.F.R. pt. 61, app. A(1), art. VII(J)(4) is as follows:

> Within [sixty] days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
> a. The date and time of loss;
> b. A brief explanation of how the loss happened;
> c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
> d. Details of any other insurance that may cover the loss;
> e. Changes in title or occupancy of the covered property during the term of the policy;
> f. Specifications of damaged buildings and detailed repair estimates;
> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
> i. The inventory of damaged personal property described in J.3. above.

Further, the SFIP provides that "[i]n completing the proof of loss, [an insured] must use [his or her] own judgment concerning the amount of loss and justify that amount," and a timely proof of loss must be submitted even if the adjuster does not furnish the form or help with its completion. *Id.* pt. 61, app. A(1), art. VII(J)(5), (7).

9

had, at the latest, until February 21, 2012 to submit a proof of loss with respect to their claim. (Def.'s SMF ¶ 14.) Here, plaintiffs submitted three proofs of loss: in December 2011, August 2012, and June 2013. (*Id.* ¶¶ 6-7, 11.) However, the December 2011 proof of loss—the only one submitted within the allotted time frame—was unsigned and undated.[7] (*Id.* ¶ 6.)

The Second Circuit requires strict construction and enforcement of the SFIP proof-of-loss requirements, explaining that "[p]rotection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law." *Jacobson*, 672 F.3d at 173, 175-76 (internal quotation marks and citation omitted) (ruling that, where a plaintiff submitted a proof of loss, but failed to designate a specific amount of damages, the district court properly granted summary judgment to the insurer). To that end, courts in this Circuit have consistently held that the failure to submit a complete, timely, signed and sworn proof of loss is an absolute bar to a plaintiff's claims. *See Wing Bldg. Holding Co. LLC v. Standard Fire Ins. Co.*, No. 1:13-CV-1007, 2015 WL 631956, at *3

---

[7] Fidelity also notes that the proofs of loss submitted by plaintiffs did not satisfy the SFIP requirement that insureds specify the amount claimed, as the December 2011 form merely declined the amount offered by Fidelity, and the August 2012 and June 2013 forms were equivocal. (Dkt. No. 23, Attach. 18 at 12; Dkt. No. 28 at 5.)

(N.D.N.Y. Feb. 13, 2015) (determining that, where plaintiff suffered flood loss related to Hurricane Irene in August 2011, failure to submit a proof of loss until July 31, 2012 forfeited plaintiff's right to any recovery under the SFIP); *Abend Family Ltd. P'ship v. NGM Ins. Co.*, No. 5:13-cv-8, 2014 WL 6085769, at *5-6 (D. Vt. Nov. 13, 2014) (holding that "[p]artial or even substantial compliance with the proof-of-loss requirement is not sufficient," where a plaintiff submitted a proof of loss for an undisputed amount along with "supplemental proofs of loss in the form of paid bills and the amount and type of work involved[,] as the damage from the flood became apparent"); *Kehoe v. Travelers Ins. Co.*, No. 1:08-CV-566, 2009 WL 87589, at *1, *3 (N.D.N.Y. Jan. 12, 2009) (finding that failure to submit a timely proof of loss barred a suit, even though the plaintiff had been "in frequent contact with [the insurer] regarding his claim, and provided the insurer with an independent engineer's report which opined the loss was due to erosion caused by flood waters"); *see also Mancini v. Redland Ins. Co.*, 248 F.3d 729, 734-35 (8th Cir. 2001) (concluding that a proof of loss was invalid when accompanied by a transmittal letter only bearing the printed names of the insured, for it had not been signed and sworn as required by the SFIP); *Gowland v. Aetna,* 143 F.3d 951, 954 (5th Cir. 1998) ("[W]e hold that an

11

insured's failure to provide a complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim.").

In addition, because the SFIP makes insureds responsible for ensuring compliance with the proof of loss requirement, *see* 44 C.F.R. pt. 61, app. A(1), art. VII(J)(7), Fidelity's "fail[ure] to provide a [p]roof of [l]oss with the correct date and amount," (Dkt. No. 25 at 2), is immaterial. *See Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 810 (3d Cir. 2005) ("The SFIP places the onus on the insured to file the proof of loss within [sixty] days regardless of the representations and assistance, or lack thereof, provided by the insurer or its adjuster.").

Accordingly, although Fidelity was aware of a loss at plaintiffs' property, because they failed to comply with the proof-of-loss policy requirements, plaintiffs forfeited any right to demand recovery under the SFIP for their Tropical Storm Lee claim, and Fidelity is entitled to summary judgment on plaintiffs' breach of contract claim.

B. **Plaintiffs' Second Cause of Action**

Next, Fidelity seeks summary judgment on plaintiffs' second cause of action, arguing that any extra-contractual claims are preempted by federal

12

law.  (Dkt. No. 23, Attach. 18 at 15-24.)  Plaintiffs fail to respond to this argument.  The court agrees with Fidelity.

The Second Circuit has noted that the FEMA regulations explicitly state that "'[a]ll disputes arising from the handling of any claim under [a NFIP] policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law.'"  *Jacobson*, 672 F.3d at 174 (quoting 44 C.F.R. pt. 61, app. A(1), art. IX).  Accordingly, absent authorization by the NFIA and/or the SFIP, an insured may not assert extra-contractual claims against a WYO company.  Concurring with the reasoning of other circuit courts that have spoken on this issue, this court has held that the NFIA does not expressly authorize insureds to bring extra-contractual state law claims related to the handling of a flood insurance claim.  *See Southbridge 21 LLC v. Standard Fire Ins. Co.*, No. 3:14-cv-374, 2014 WL 4637083, at *3-4 (N.D.N.Y. Sept. 16, 2014)[8]; *see also Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 772-73 (8th Cir. 2013) ("We conclude that [plaintiffs'] claims for

---

[8] Plaintiffs' second cause of action is ambiguous.  While plaintiffs allege breach of the covenant of good faith and fair dealing, they also claim Fidelity's behavior was tortious.  (Compl. at 3.)  Nonetheless, as in *Southbridge*, whether plaintiffs' second cause of action "sounds in contract or tort . . . is of no moment[ because] state-law claims are preempted by the NFIA" when they are "intimately related to the disallowance of [an] insurance claim."  2014 WL 4637083, at *3 n.5 (internal quotation marks and citations omitted).

specific performance, unjust enrichment, and bad faith are expressly preempted by federal law."); *C.E.R. 1988, Inc. v. The Aetna Cas. & Sur. Co.*, 386 F.3d 263, 270-72 (3d Cir. 2004) (holding that the NFIA preempts state law and "conclud[ing] that the application of state tort law would impede Congress's objectives . . . to reduce fiscal pressure on federal flood relief efforts"); *Ravasio v. Fidelity Nat. Property*, No. 13-CV-1510; 2015 WL 390334, at *5 (E.D.N.Y. Jan. 29, 2015) ("[E]ven if the [p]laintiffs' could recover their claimed amounts, the [c]ourt would deny their extra-contractual requests for interest, costs, and attorneys' fees. The [NFIA] preempts state law claims for penalties and attorneys' fees brought against WYO insurance carriers participating in the FEMA's NFIP." (internal quotation marks and citation omitted)).[9] Further, "courts have recognized that actions arising out of the handling of claims under the [NFIA] do not give rise to federal common law claims." *Kehoe*, 2009 WL 87589, at *3 n.2; *see Gunter*, 736 F.3d at 773 ("[Plaintiffs] seek to bring tort and extra[-]contractual claims under federal common law to obtain state

---

[9] Notably, plaintiffs do not allege any wrong-doing on the part of Fidelity with respect to the procurement of the SFIP, but only complain of its conduct as it relates to the *handling* of their claim. (*See generally* Compl; Dkt. No. 25 at 1-10); *see, e.g.*, *C.E.R. 1998*, 386 F.3d at 271 n.12 (noting that whether the NFIA preempts state law claims arising out of the procurement of a policy is less well-settled). Thus, the court need not discuss this distinction.

14

law remedies otherwise preempted. It would frustrate the intent of Congress to allow preempted state law claims to proceed under the guise of federal common law."); *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 394-95 (5th Cir. 2007) (ruling that the reference to federal common law in the SFIP "directs courts to employ standard insurance principles when deciding *coverage* issues under the policy," but does not provide for any federal common law extra-contractual relief against a WYO insurer); *Howell v. State Farm Ins. Cos.*, 448 F. Supp. 2d 676, 678-79 (D. Md. 2006) (noting that the court was unable to find any case law creating a cause of action for breach of the implied covenant of good faith and fair dealing, or breach of fiduciary duty under federal common law).

Accordingly, as it is preempted by federal law, summary judgment is granted as to plaintiffs' second cause of action.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Fidelity's motion for summary judgment (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is further;

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 6, 2015
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court